Lomax, J.
delivered the opinion of the Court.*
The prisoner has been convicted in the Circuit Court of Henrico, upon an indictment, wherein it is charged, that he feloniously and fraudulently at the county of Henrico, did take possession of a negro boy slave named *630 John, the property of William Richardson ; and did feloniously and fraudulently remove the said slave beyond the limits of the said county of Henrico into the county of Prince George, with intent in so doing to defraud the said William Richardson, the owner of the slave ; and deprive him of the said slave, contrary to the form of the statute in such case made. The prisoner has been convicted by the verdict of the jury; which has affixed two years as the term of his confinement in the penitentiary. In the Circuit Court, the prisoner moved after verdict, in arrest of judgment; and suggested for error, that there is no averment in the indictment, that the slave John was carried from the county of Henrico to the county of Prince George, without the consent of the said William, the owner of the slave: so that upon the face of the indictment it does not appear, that any criminal offence is charged: and the indictment is not sufficient in law to warrant a judgment against the prisoner ; or to convict him of the supposed felony. The Judge of the Circuit Court has thereupon adjourned to this Court the question—whether the objections presented by the plea in arrest of judgment are sufficient to arrest the judgment ?
The 29th section of 1 Rev. Code, ch. Ill, makes it felony to be guilty of stealing any negro or mulatto slave whatsoever; and inflicts as a punishment for this offence, a confinement in the penitentiary not less than three, nor more than eight years. The 30th section of the same act enacts: That “ whosoever shall carry, or cause to be carried, any slave or slaves, out of any county or corporation within this Commonwealth, into any other county or corporation within the same, without the consent of the owner or owners of such slave or slaves, &c., with intention to defraud or deprive such owner of such slave, shall be adjudged guilty of felony, and subject to prosecution as in other cases of felonies ; and, upon conviction thereof, shall be punished by a *631 fine, not less than one hundred, nor more than five hundred dollars; and shall also be imprisoned in the jail or penitentiary house for a period, not less than two nor more than four years: which fines and imprisonment shall be fixed and ascertained by a jury,” &c. The same section moreover subjects the offender to a civil action of the owner of the slave.
In considering the question which has been adjourned, this Court has confined its attention to the discrepancy alleged between the charge laid in the indictment, and the description of the offence as given in the language of the statute; and the consequences of that discrepancy. The indictment has departed from the terms of the statute, in substituting the word “removed” in the place of the word “ carried:” and has wholly omitted an averment, that the removal of the slave was “ without the consent of the owner.” This Court, upon the consideration of the question adjourned, has come to the conclusion that this indictment is fatally defective; and is not cured by the verdict of the jury.
The description given of an indictment is, that it is a plain, brief and certain narrative of an offence, committed by any person; and of those necessary circumstances that concur to ascertain the fact, and its nature; in which, in favour of life, great strictness has at all times been required. 2 Hale’s P. C. 169. And, therefore, it is laid down as a good general rule, that in indictments, as well as appeals, the special manner of the whole fact ought to be set forth with such certainty, that it may judicially appear to the Court, that the indictors have not gone upon insufficient premises. Cro. Eliz. 147, 201; 2 Hawk. P. C. ch. 25, § 57; 3 Bac. Abr. 553-4. It seems that the same principles, which require in civil actions that all the essential circumstances which go to constitute a cause of action, shall be averred in the declaration, apply with at least equal force in criminal cases; requiring that all essential circumstances constituting the crime, *632 shall be set forth in the indictment, as in the declaration i an-d that there is no real difference between indictments and actions, where the gist of the action must ke positively averred. Rex v. Lawley, 2 Str. 904. It is laid down, where the indictment is grounded upon an offence created by act of parliament, that the indictment must, by express words, bring the offence within the substantial description made in the act of parliament, and those circumstances mentioned in the statute to make up the offence shall not be supplied by the general conclusion, contra formam statuti. 2 Hale’s P. C. 170. So it was said by Lord Mansfield, that it was necessary to specify the offence, where the words of the statute are descriptive of the nature of the offence, in the particular words of such statute. Rex v. Pemberton, 2 Burr. 1037; and see Foster 423-4. The same principle is commented upon and illustrated in several modern treatises on the English practice in criminal proceedings. Stark. Cr. Pi. ch. 5, §> 12; Archb. Cr. Pl. 40-54; 1 Chit. Or. L. 227-239. And it has been laid down, as a general rule, that unless where the statute is recited (which in practice is now never done) neither the words contra formam statuti, nor any periphrasis, intendment or conclusion will make good an indictment, which does not bring the offence within the material words of the statute. 2 Hawk. P. C. ch. 25, <§> 110. These authorities would seem to be decisive of the question now propounded, as to the insufficiency of the allegations in the indictment in this case, if the question is to be determined upon the doctrines of the English law; or as the law formerly stood in Virginia, before the statute of jeofails in criminal cases: the effect of which will be presently considered. How far the substitution of the word “remove,” in the indictment, for the word “carry,” which is the word used in the statute, might tend to vitiate this indictment, would seem upon English authorities, not entirely free from doubt. Asportavit or car- *633 tied away, are words sometimes having such technical use, that they cannot be well supplied by employing other words of similar import: as for instance in larceny. How far a word not in the statute can be substituted in the indictment, even though the word substituted may be equivalent to the word in the statute, or may have a more extensive signification, or may include the statutory word, seems not to be settled in the English books. See Archb. Cr. PI. 52, and the authorities there referred to. The Court is content to pass by this supposed defect in this indictment; because there is a much less questionable error, for failing to aver that the slave which was removed or carried, was removed or carried “ without the consent of the said William Richardson, the owner of the said slave.” In framing the 30th section of the act, the Legislature certainly designed so to describe the offence thereby created, as to distinguish it from the crime of stealing a slave; which was the of-fence constituted by the preceding section. And it also as certainly designed, by the description which was given, to distinguish it from a mere personal tort or trespass. The wrong which it elevated into the rank of felony, had some strong points of resemblance to the larceny on the one hand, and a civil trespass upon the other. It required, therefore, a careful use of terms, that the Legislature might mark and distinguish the peculiar nature and character of this new offence. It is highly important, therefore, in prosecutions for this of-fence, that the indictment should not be allowed loosely and carelessly to depart from the terms which the Legislature has employed in describing this special offence, lest it should be confounded with other injuries to which it has some strong points of resemblance. There can certainly be no propriety in such a case, to countenance a greater degree of laxity, than in indictments for other statutory offences. The absence of the slave-owner’s consent is expressly required in the statutory description, *634 and is a constituent of the offence. That constituent is equally essential as the other terms with which it is connected, to complete the description of the felony. ■ It is not for us to enquire, why the Legislature thought proper to make the absence of the owner’s consent an essential part of the case, in addition to the circumstances of carrying the slave, and of the intention to defraud or deprive the owner of the slave. Nor are we bound to search for cases, though it would not be difficult to imagine one, where the offender may have carried a slave out of one county into another county within the Commonwealth, and that, too, with intention to defraud or deprive the owner of the slave, and still the act may not have been unaccompanied with the owner’s consent, obtained under the influence of frauds or artifices, which may have been practised upon him by the offender or by other persons. If such a case should. happen, it surely could not be contended that it would come within the statute. If such a case be regarded as a possible one, the Court can have no authority for treating the language of the statute in this particular as an unmeaning part of the statutory description, and to discard any part of it as senseless, or superfluous verbiage.
If the direct averment of the particular circumstances constituting the prisoner’s offence, as set forth in the indictment, does not bring his case within the express terms of the statute, this defective averment will derive no aid, because the indictment alleges that the acts set forth were felonious, and contra formam statuti ; which, it may be said, that they would not be, unless the removal or carrying of the slave was without the consent of the owner. The use of these words—feloniously, which is essential in all indictments for felonies at common law or by statute—and contra formam statuti, in all indictments for statutory offences, has never been considered as having the effect to aid any imperfection in describing the particular circumstances constituting *635 the crime. It is believed that no case to sutain such a notion can be produced. If such were the doctrine, it is difficult to conceive, in cases where the indictments have adhered to the forms averring that the acts were feloniously committed, or contra formam statuti, what ground there could have been for any question upon such indictments for want of sufficient certainty in setting forth the particular circumstances of the case. For by this summary and comprehensive mode of reasoning, there would always have been a ready answer to such question—that as a felony or breach of the statute had been averred, all the requisites to constitute the felony or the breach of the statute, must in that averment be implied, and be understood as fully as if they had been minutely set forth. The whole current of authorities goes to shew that the particular circumstances of the crime must be set forth, so as to sustain the averment in legal intendment, that the circumstances amounted to felony, or to a breach of the statute. The circumstances charged as constituting the crime, are facts falling within the province of the jury to try and determine. The criminal effect of those acts, as charged or proven, is an inference which the law deduces; and whether they amount to felony, or a breach of a statute, it is the proper function of the Court to pronounce, whenever, upon the circumstances charged or proven, the accused may, in some appropriate form, think proper to raise that question. If the averment in the indictment of these matters of legal inference, can be regarded as a part of the description of the circumstances of the of-fence, the accused would be precluded from his privilege of demurring to the indictment: for then the felony or violation of the statute would be admitted by him. He would be precluded from his privilege of raising the question after the verdict, if it was a general one; for then they had been established against him by the finding of the jury; and in the latter case, the jury, *636 by finding a pure matter of law against him, debars him from raising any question as to the sufficiency of the matters of fact, to constitute the crime at law: thus obliterating principles which mark out the respective provinces of the Court and the jury in all legal proceedings. It is essential in all indictments for felony, that the of-fence shall be charged to have been feloniously committed. Barker’s Case, 2 Va. Cas. 122. This would seem to be required in order to shew the colour or class of of-fences, under which the accused is to be arraigned and tried. If the offence is not so charged, it does not in the gradation of crimes, belong to that class denominated felonies. He cannot be prosecuted for the offence as such, though the acts which he is charged to have committed, may in fact and in law constitute a felony. An indictment, therefore, for burglary, must lay the of-fence to be felonice. 2 Hale’s P. C. 184. If A. be indicted that furatus est unum equum; it is but trespass, for want of the word felonice. Ib. Stamp. P. C. 96. But though the charge be felonice, it does not make it less necessary that the special manner of the whole fact should be set forth with such certainty that it may judicially appear to the Court (as has before been stated) that the indictors have not gone upon insufficient premises. And upon this ground, it seems to be agreed, that an indictment, finding that a person has feloniously broken prison, without shewing the cause of his imprisonment, &c., by which it may appear that it was of such a nature that the breaking might amount to felony, is insufficient. See 2 Hawk. P. C. ch. 25, $ 57; 2 Hale’s P. C. 183, 184 j Rex v. Jackson Randall, 1 Leach. Cr. L. 267; Rex v. Davis, Ib. 493; Rex v. Baines, 2 Ld. Raym. 1265. Nor is the conclusion contra formam statuti required for any purpose of giving certainty or sufficiency to the particulars of the offence, as they are charged in the indictment. That conclusion is made necessary, because every offence for which a *637 party is indicted, is supposed to be prosecuted, as an of-fence at common law, unless the prosecutor, by reference to a statute, shews, that he means to proceed upon the statute. And without such express reference, if it be no offence at common law, the Court will not look to see, if it bo an offence by statute. Per Lawrence, J. Lee v. Clarke, 2 East’s R. 340; Com'th v. Hays, 1 Virg. Cas. 122; 2 Ld. Raym. R. 1105. By an authority herein before cited, (2 Hawk. P. C. ch. 25, *§> 110,) it satisfactorily appears, not only that the words contra formam statuti will not make an indictment good, which does not bring the offence within the material words of the statute, but also, that no periphrasis, or intendment, or conclusion, will have that effect.
This indictment being for the objections to it suggested by the prisoner, clearly bad upon the principles of the English law, it is important to determine whether its defects and imperfections are of that nature that they may be cured by the Virginia statute of jeofails in criminal cases. It is enacted 1 Rev. Code, ch. 169, § 44, that “ after the verdict of twelve men, no judgment on any indictment or information for felony, or any other offence whatsoever, shall be stayed or reversed for any supposed defect or imperfection in any such indictment or information, so as the felony or offence therein charged to have been committed or done, be plainly and in substance set forth, with convenient certainty, so as to enable the Court to give judgment thereon, according to the very right of the cause; any former law, custom or usage to the contrary notwithstanding.”
Before the passage of this act, the strictness required by the common law in indictments had become a most serious impediment to the administration of criminal justice. Any defect or imperfection in the indictment, of form or of substance, was fatal; and might be taken advantage of by motion to quash the indictment, or by *638 demurrer, or by errors in arrest of judgment. What was error upon demurrer before verdict, was equally exceptionable after verdict. 4 Bl. Comm. 334; 2 Hale’s P. C. 257; 1 Chit. Cr. L. 662-3; Stark. Cr. Pl. 398. It was remarked by Lord Hale, (2 Hale’s P. C. 193,) that “ in favour of life, great strictness has been in all times required in points of indictments; and the truth is, that it has grown to be a blemish and inconvenience in the law, and the administration thereof. More offenders escape by the over-easy ear given to exceptions in indictments, than by their own innocence; and many times gross murders, burglaries, robberies, and other heinous and crying offences, escape by these unseemly niceties, to the reproach of the law, to the shame of the government, and to the encouragement of villainy, and to the dishonour of God. And it were very fit, that by some law this overgrown curiosity and nicety were reformed, which is now become the disease of the law, and will, I fear, in time grow mortal without some timely remedy.” Such was the state of the law in Virginia, until in 1804, the Assembly enacted the provision which has above been cited, and which was doubtless designed, according to the suggestion of Hale, as the remedy for the disease of the law, of which he had so vehemently complained. This act is susceptible of a plain construction, to suppress the mischief which existed, and to advance the remedy, (see Heydon’s Case, 3 Coke’s R. 7,) without subverting or disturbing any of the great substantial principles by which the common law regulated the pleadings in criminal cases.
There can be no necessity, in order to cure the defects and imperfections which the statute speaks of. that we should adopt such a latitude of construction as will tolerate a less degree of certainty or particularity in indictments or informations, than the practice allows in pleadings, at least upon general demurrer, in civil actions : or that any intendments shall supply the place *639 of particular averments in the former cases, that would be inadmissible for that purpose, in the latter. There can be no propriety in denying to the accused, having the constitutional “ right to demand the cause and nature of his accusation,” the right to have that accusation set forth in all its substantial particulars: to have it shewn upon the face of tho indictment, that the grand jury who found it, have passed upon all the circumstances that are material to constitute the charged of-fence ; to have the crime so identified, that the accused may not he put upon his trial for a crime, not the same as that which the grand jury have charged him with committing; and that the conviction or the acquittal may be his protection against any future prosecution of the same offence: to have his accusation so distinctly alleged, that he may prepare for his trial, and may have the privilege, as he may be best advised, of pleading or demurring, or resorting to any other course of proceeding which the law has afforded him for his defence. Indictments being upon the oath of the grand jury, is a circumstance of weighty consideration why they should undergo no amendment or alteration after they have been found. And hence the practice, which still continues in Virginia, of asking permission of the members of the grand jury, before their discharge, for the Court to amend the form, not altering matters of substance in the bills which they may have found. Such amendment or alteration, to some extent, is virtually effected by the act of 1804 But the consideration alluded to, as well as the general spirit of the law in criminal proceedings, demands of Courts that that statute should, in its practical construction, be confined within the strictest limits.
The language of this statute of jeofails in criminal cases, in speaking of “ the supposed defects and imperfections,” and in speaking of the judgment “according to the very right of the case,” has obviously been *640 adopted from the 27th Eliz. ch. 5, and the 4th Ann. ch. 16, relating to demurrers in civil actions, which statutes have been embodied in our revisal. Ch. 128, >$ 101. In the construction of these statutes and the other statutes of amendment and jeofails, it never has been held, either in England or in Virginia, before a certain amendment introduced into the revisal of 1819, (ch. 128, >§> 103,) that any other defects or imperfections in civil pleadings, but those merely of form, were aided, either before or after verdict; or that these statutes allowed any relaxation of the common law, so far as it required the averment of every substantial matter to sustain the right which was relied upon. This is abundantly shewn by the authorities, both in England and in Virginia. These statutes have always been held, only to cure a case defectively stated in the pleadings; but not to cure a case appearing upon the pleadings to be defective. See Bac. Abr. title Verdict X.; Amendment and Jeofail E; Chichester v. Vass, 1 Call 99; Laughlin v. Flood, 3 Munf. 125. But the act of assembly now under consideration, has been yet more explicit than any of the statutes of jeofails which have been referred to. As if to preclude any doubt as to the character of the supposed defects or imperfections in indictments or informations, which it designed to cure after verdict, it expressly provides, “ so as the felony or offence therein charged to have been committed or done, be plainly and in substance set forth, with convenient certainty in any such indictment or information,” and adds, “ so as to enable the Court to give judgment thereon according to the very right of the case ;” that is, upon the indictment or information. This the Court would not be enabled to do, if any material circumstance, constituting the crime, were omitted: and such, this Court considers the circumstance, without the consent of the owner of the slave, which is omitted to be averred in the indictment in the present case.
*641 It must have been in accordance with the principles herein stated, that the General Court said in Barker's Case, 2 Virg. Ca. 126, “ that this statute of jeofails was not intended to introduce carelessness or laxity in pleading; but merely to cure those defects which the over-nicety of Courts had introduced into the common law; and which did not put the rights of the Commonwealth or accused in jeopardy. And in that case, it was held that the laying in the indictment, to whom the things belonged, was matter of substance; and for omission to lay that circumstance, the judgment was arrested.
This Court is therefore of opinion, that the judgment to be entered in the Court below is, that the judgment be arrested.

 JYote by the Judge.—The judgment in this case was pronounced in theyearl834. (See 4 Leigh 692.) The opinion, which was delivered for the Court by one of the Judges, was hastily written during the term; and with a succinctness, that he was himself dissatisfied with.
He was indulged by the other Judges, with permission to take the opinion home with him, that it might be written out with a more enlarged and clearer exposition of the doctrines which it embraced. Circumstances prevented him from fulfilling this design before the volume containing the report of the case was published. The design was thereupon relinquished by him, as being out of time. The numerous applications however, which have since been made to him for the opinion, and the representations which have been made of the practical importance of the decision, have induced him, even at this late day, to prepare the opinion for publication. In doing so, he has strictly confined himself within the views expressed in the original opinion that was adopted by the Court; and has aimed merely to enlarge them with more clearness and a more extended consideration of the authorities to sustain the judgment which was pronounced.